Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Counsel for Plaintiff*

[*Additional counsel on signature page*.]

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD E. MARSHALL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXAR CORPORATION, RYAN A. BENTON, GARY MEYERS, BEHROOZ ABDI, IZAK BENCUYA, PIERRE G. GUILBAULT, BRIAN HILTON, and JEFFREY JACOBOWITZ,<br><br>Defendants. | Case No. 3:17-cv-02334<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Richard E. Marshall ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public stockholders of Exar Corporation ("Exar" or the "Company") against the members of Exar's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a)) and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. § 240.14d-9(d) ("Rule 14D-9") arising out of their attempt to sell Exar to MaxLinear, Inc. and its affiliated entity Eagle Acquisition Corporation (collectively "MaxLinear").

2. On March 29, 2017, MaxLinear and the Company announced they had entered into an Agreement and Plan of Merger dated March 28, 2017 ("Merger Agreement"), by which MaxLinear, through its wholly-owned subsidiary Eagle Acquisition Corporation, would launch a tender offer to acquire all outstanding shares of Exar in an all-cash transaction for $13.00 per share in cash (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $700 million, or $472 million net of Exar's cash acquired.

3. MaxLinear and its affiliate launched the tender offer on April 13, 2017. Unless extended or terminated earlier, the tender offer is set to expire on May 11, 2017.

4. On April 13, 2017, Exar filed a Schedule 14D-9 Recommendation/Solicitation Statement ("Recommendation Statement") with the SEC. The Recommendation Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the financial projections of the Company used by its financial advisor, Cowen and Company, LLC ("Cowen"), in its financial analysis provided to the Board, and the conflicts of interest impacting certain members of the Board and entities affiliated with them.

5. The Recommendation Statement contains other material omissions that render it materially misleading, necessitating disclosure of further information about (i) the process culminating in the execution of the Merger Agreement; and (ii) material inputs and assumptions underlying Cowen's financial analysis. Without additional information, the Recommendation Statement is materially misleading in violation of federal securities laws.

6. By unanimously approving the Proposed Transaction and authorizing the issuance of the Recommendation Statement, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Recommendation Statement was materially false and/or misleading. The Recommendation Statement is an essential link in accomplishing, and receiving shareholder approval for, the Proposed Transaction.

7. The Individual Defendants have violated federal securities laws and Plaintiff seeks to enjoin the Proposed Transaction unless and/or until Defendants issue supplemental disclosures to make the Recommendation Statement not false and/or misleading.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Sections 14(d) and 14(e) of the Exchange Act, Rule 14D-9 promulgated thereunder, and Section 20(a) of the Exchange Act.

9. Venue is proper in this Court because Exar maintains its principal place of business in this District, and one or more of the Defendants reside, have agents, and/or regularly transact business in this District as provided in 28 U.S.C. § 1391(b) and (c).

**PARTIES AND RELEVANT NON-PARTIES**

10. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Exar.

11. Exar is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal executive offices at 48720 Kato Road, Fremont, California 94538.

12. Defendant Ryan A. Benton ("Benton") has been the Chief Executive Officer and a member of the Board since May 2016.

13. Defendant Gary Meyers has been a director of the Company since 2008 and Chairman of the Board since September 2016.

14. Defendant Behrooz Abdi has been a director of the Company since September 2012.

15. Defendant Izak Bencuya has been a director of the Company since 2009.

16. Defendant Pierre G. Guilbault ("Guilbault") has been a director of the Company since August 2007. Guilbault is Executive Vice President and CFO of Future Electronics Inc. ("Future"). Future is the Company's largest distributor and, according the Form 10-K the Company filed with the SEC on May 27, 2016 ("Form 10-K"), together with its affiliate Alonim Investments Inc. ("Alonim"), accounted for approximately 24% of the Company's net total sales for the fiscal year ended March 27, 2016. Alonim is an affiliate of Future and the Company's largest stockholder. The Form 10-K states that Alonim, through a wholly-owned subsidiary, owned approximately 7.6 million shares, or 16%, of the Company's outstanding stock as of March 27, 2016.

17. Defendant Brian Hilton has been a director of the Company since 2007.

18. Defendant Jeffrey Jacobowitz ("Jacobowitz") has been a director of the Company since February 7, 2017. Jacobowitz is the founder and a Managing Member of Simcoe Partners, L.P., which together with certain of its affiliates reporting an ownership interest of 5.2% of the outstanding shares of Exar on November 22, 2016.

19. Defendants referenced in ¶¶ 12 through 18 are collectively referred to as Individual Defendants and/or the Board.

20. Relevant non-party MaxLinear is a Delaware corporation with its headquarters located at 5966 La Place Court, Suite 100, Carlsbad, California 92008.

21. Relevant non-party Eagle Acquisition Corporation is a Delaware corporation and is a wholly-owned subsidiary of MaxLinear that was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of all persons and/or entities that own Exar common stock (the "Class"). Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest are excluded from the Class.

23. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. The Recommendation Statement states that as of April 7, 2017, there were 51,476,565 shares of common stock outstanding. All members of the Class may be identified from records maintained by Exar or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24. Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Recommendation Statement in violation of federal securities laws; and (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the close

of the tender offer; and (iii) whether the Class is entitled to injunctive relief as a result of Defendants' wrongful conduct.

25. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

26. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

27. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background and the Process Leading to the Execution of the Merger Agreement*

28. Exar designs, develops, and markets high performance analog mixed-signal integrated circuits and advanced sub-system solutions for the Industrial and Embedded Systems, High-End Consumer, and Infrastructure markets. The Company's products are deployed in a wide array of applications such as industrial, instrumentation and medical equipment, networking and telecommunication systems, servers, enterprise storage systems, flat panel displays, LED lighting solutions, set top boxes, and digital video recorders.

29. The Board has been considering the Company's strategic options since 2015, and has held discussions for the sale of certain business segments of the entire Company with various potential purchasers. On November 9, 2016, Exar completed the sale of its iML business for $144.5 million.

30. Several weeks later, on November 22, 2016, Simcoe, defendant Jacobowitz, and certain other affiliates filed a Schedule 13D with the SEC reporting ownership of 5.2% of Exar's outstanding shares. The Schedule 13D explained that Simcoe would discussed with Exar management and its Board "regarding voluntarily adding an independent stockholder representative to the Exar Board." In addition, the filing indicated that Simcoe:

> [M]ay in the future take such actions with respect to its investment in Exar as it deemed appropriate including . . . engaging in discussions with stockholders of Exar or other third parties about Exar and Simcoe's investment, including potential business combinations or dispositions involving Exar or certain of its businesses, making recommendations or

proposals to Exar concerning changes to the capitalization, ownership structure, board structure, potential business combinations or dispositions involving Exar or certain of its businesses, or making suggestions for improving Exar's financial and/or operational performance, purchasing additional Shares, selling some or all of Simcoe's Shares, or engaging in short selling of or any hedging or similar transaction with respect to Shares, including swaps and other derivative instruments.

31.     After the announcement that Jacobowitz and Simcoe acquired a 5.2% stake in Exar, wanted an appointee to the Board, and was going to take such steps regarding its investment "as it deemed appropriate," including business combinations and "dispositions involving Exar or certain of its businesses," the sales process was thrust into high gear.

32.     On February 7, 2017, Jacobowitz was appointed to the Board. Following the meeting of the Board on February 7, 2017, Exar re-engaged Cowen to serve as its financial advisor.

33.     On February 10, 2017, MaxLinear submitted a nonbinding letter of intent to acquire Exar for $12.50 per share in cash.

34.     Two days later, at a February 12, 2017 Board meeting, Exar management reviewed with the Board a five-year financial forecast that it had prepared. The Board approved the five-year financial forecast later in the meeting. It was the only reference to a management presentation or Board review of financial projections since 2015 when the Company began considering strategic alternatives.

35.     After the Board made one counteroffer, MaxLinear proposed the agreed-upon deal price of $13.00 per share in cash on February 15, 2017. The parties entered into an exclusivity agreement on February 19, 2017, which was extended twice before the parties executed the Merger Agreement.

***The Company and the Board solicited stockholder approval of the Proposed Transaction through the materially misleading and incomplete Recommendation Statement.***

36.     The Individual Defendants are obligated under the federal securities laws to disclose information necessary to render their statements in the Recommendation Statement not materially false and/or misleading. The Individual Defendants have violated Section 14 of the Exchange Act by soliciting stockholder approval through a materially deficient Recommendation Statement.

**A.     Projections**

37.     The Recommendation Statement fails to disclose material information about Exar's projections and the omission of such information renders the Recommendation Statement materially

misleading. The Recommendation Statement should disclose: (i) taxes; (ii) capital expenditures; (iii) increases in net working capital; (iv) net operating losses; (v) tax benefits and credits; (vi) gain upon closing sale-leaseback of Exar's public headquarters; (vii) impairment charges; (viii) merger and acquisition related integration costs; and (ix) restructuring charges and exit costs.

38. The Recommendation Statement states that "Exar's management regularly prepared internal forecasts and projections for use by the Company Board and management for planning and decision making purposes." Although the Company was considering strategic alternatives since 2015, the only reference to either management's preparation or the Board's review of projections is at the February 12, 2017 Board meeting. The Recommendation Statement should disclose the extent to which management prepared and/or the Board reviewed financial projections for Exar at any point during the previous two years.

39. This omission renders the Recommendation Statement materially misleading because the review of the projections at one meeting conflicts with the representation that forecasts were regularly prepared and used for planning and decision making purposes. Moreover, the projections were presented to the Board two days after MaxLinear submitted its February 10, 2017 letter of intent to acquire Exar. The close proximity of these two events—MaxLinear's offer and the only reference to management presentation and Board review of projections over a two year period that the Company was considering strategic alternatives—gives the impression that the projections were prepared in connection with the MaxLinear offer and not for "planning and decision making purposes."

40. Disclosure of the omitted financial projections is material because it would enable stockholders to meaningfully project the financial performance of Exar going forward, as well as to better understand the financial analyses performed by the Company's banker that underlied its fairness opinion.

B. **Cowen's Financial Analyses**

41. The Recommendation Statement also omits material information about Cowen's financial analyses, which renders the Recommendation Statement materially misleading.

42. In Cowen's *Discounted Cash Flow Analysis*, the Recommendation Statement should disclose: (i) the basis for utilizing projected unlevered free cash flow for the fiscal years ending in 2018-

2021 when Exar provided cash flow projections through fiscal year 2022; (ii) the "present value of the Company's estimated United States federal and California state net operating loss carry forwards"; (iii) the projected unlevered free cash flow utilized by Cowen in its analysis and its definition and constituent line items; and (iv) the terminal value of the Company.

43. Additionally, Cowen conducted an *Analysis of Selected Publicly Traded Companies* and an *Analysis of Selected Transactions*. For each of these analyses, the Recommendation Statement fails to disclose the multiples and financial metrics that Cowen observed. This is particularly important with respect to the *Analysis of Selected Publicly Traded Companies* because Cowen selected purportedly comparable companies that were in excess of $5 billion notwithstanding that Exar is valued at only approximately $700 million in the Proposed Transaction.

44. Where, as here, the Company touts to stockholders a banker's endorsement of the supposed "fairness" of the transaction, the valuation methods used to arrive at that opinion along with the key inputs and range of values generated by those analyses need to be disclosed fairly.

C. **The Background of the Proposed Transaction and Conflicts of Interest**

45. The Recommendation Statement should disclose the amount of money that certain key stockholders and their affiliated entities would make from the Proposed Transaction if they were to tender all of their outstanding shares pursuant to the tender offer. These amounts are significant, since the Recommendation Statement states that key stockholders, "including Exar's directors and executive officers," who together own approximately 20% of the total shares outstanding as of the date of the Merger Agreement, have agreed to tender their shares. The Recommendation Statement states that as of April 7, 2017, non-employee directors and executive officers beneficially owned, in the aggregate, approximately 0.65% of Exar's outstanding shares. This is misleading because it excludes the ownership interests of the related and affiliated entities that are connected with non-employee directors.

46. The Recommendation Statement should disclose the amount of money that Alonim would make from the Proposed Transaction if it tendered all of its shares. On page 5 of the Recommendation Statement, there is a chart indicating how much each executive officer and non-employee director would be entitled to receive if they tendered their shares, but the chart does not indicate the value that Defendant Guilbault and his company Future and its affiliates, particularly Alonim, would receive. Assuming that

Alonim continues to own approximately 7.6 million shares, which is the amount of ownership it reported in the Form 10-K, if tendered at the $13.00 offer price it would result in Guilbault and his affiliates receiving approximately $98.8 million.

47. The Recommendation Statement should disclose the amount of money that Defendant Jacobowitz and his company Simcoe and related entities would make from the Proposed Transaction if they were to tender all of their outstanding shares pursuant to the tender offer. On page 5 of the Recommendation Statement, there is a chart indicating how much each executive officer and non-employee director would be entitled to receive if they tendered their shares, but the chart does not indicate the value that Jacobowitz, Simcoe, and the related entities would receive. According to the share count provided in footnote 1 of the chart, Jacobowitz and entities under his control owned 2,577,901 shares as of the date of the filing. Based on these numbers, if tendered at the $13.00 offer price, it would result in Jacobowitz and his related entities receiving $33,512,713.

48. The omission of this information renders the Recommendation Statement materially misleading. As it currently reads, the Recommendation Statement states (at p. 5) that executive officers and directors "would receive an aggregate of $4,354,260 in cash," if they tendered all their shares. This is materially false and misleading because it does not include the $98.8 million that Guilbault and his affiliated entities would receive, or the more than $33.5 million Jacobowitz and affiliated entities would make in the transaction if they tender. Indeed, the $4,354,260 stated in the Recommendation Statement is only 3% of the approximately $136.8 million that officers and directors would receive if Defendants Guilbault, Jacobowitz, and their related entities were included.

49. Further, this quantitative disclosure is also material because it helps stockholders evaluate how much Jacobowitz's and his affiliates' interests may conflict with public stockholders. Simcoe, and by extension Jacobowitz and affiliated entities, filed the Schedule 13D announcing their 5.2% interest in Exar on November 22, 2016—a mere four months before the Proposed Transaction was announced. The closing price of Exar stock on November 22, 2016 was $10.09, meaning that for the approximate 2,577,901 shares Jacobowitz, Simcoe, and affiliated entities own (Recommendation Statement, 5 n.1), Jacobowitz is making a $7.5 million profit.

50. Defendant Guilbault is an executive officer for Alonim, an affiliate of Future. Future is Exar's largest distributor. The Recommendation Statement should disclose: (i) whether Alonim will provide services for MaxLinear if the Proposed Transaction closes; and (ii) if so, when such discussions were held, who negotiated the agreement, and Guilbault's involvement (if any).

51. The Recommendation Statement also fails to disclose the terms and value of the indication of interest to acquire Exar that was discussed by the Board at its February 18, 2017 meeting.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14(e) of the Exchange Act
### (Against All Defendants)

52. Plaintiff repeats all previous allegations as if set forth in full herein.

53. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders to tender their shares in the Proposed Transaction.

54. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

55. The Recommendation Statement violates Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

56. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

57. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to decide whether to tender their shares on the basis of complete information if such misrepresentations and omissions are not corrected before expiration of the tender offer currently set for May 11, 2017.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**
**(Against All Defendants)**

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders to tender their shares in the Proposed Transaction.

60. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Pursuant to Item 8 of SEC Rule 14d-9(d), the Board was required to "[f]urnish such additional information, . . . as may be necessary to make the [Recommendation Statement's] required statements, in light of the circumstances under which they are made, not materially misleading."

61. As set forth above, the Recommendation Statement is materially misleading in numerous respects and omits material facts. Indeed, Defendants make certain partial disclosures in the Recommendation Statement that must be supplemented so as to make them not materially misleading.

62. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to decide whether to tender their shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to expiration of the tender offer currently set for May 11, 2017.

**COUNT III**
**Violations of Section 20(a) of the Exchange Act**
**(Against All Individual Defendants)**

63. Plaintiff repeats all previous allegations as if set forth in full herein

64. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Company stockholders.

65. The Individual Defendants were involved in drafting, producing, reviewing, and/or disseminating the materially false and misleading statements complained of herein. The Individual

Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified, and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

66.  The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Exar's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

67.  The Individual Defendants acted as controlling persons of Exar within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Exar to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Exar and all of its employees. As alleged above, Exar is a primary violator of Section 14 of the Exchange Act and SEC Rule 14d-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A)  declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B)  declaring that the Recommendation Statement is materially false and/or misleading;

(C)  enjoining, preliminarily, and permanently the Proposed Transaction;

(D) if the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E) directing that Defendants account to Plaintiff and the other members of the Class for all damages they caused;

(F) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: April 25, 2017

**LEVI & KORSINSKY LLP**

By: */s/ Rosemary M. Rivas*
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

**OF COUNSEL**

**LEVI & KORSINSKY LLP**
Joseph Levi
Michael H. Rosner
Justin G. Sherman
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Attorneys for Plaintiff*

**CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, Richard E. Marshall, declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed a draft complaint against Exar Corporation and the other named defendants, and I authorized the filing of a complaint substantially similar to the one I reviewed;

2. I select as my attorneys Levi & Korsinsky LLP and any firm with which it affiliates for the purposes of prosecuting this action;

3. I did not purchase the securities that are the subject of this Complaint at the direction of my counsel or in order to participate in this litigation;

4. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary;

5. I conducted the transactions in the securities as set forth in the attached chart, which are the subject of the Complaint during the Class Period;

6. During the three years prior to the date of this Certification, I have not participated, nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws;

7. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I hereby certify, under penalty of perjury, that the foregoing is true and correct. Executed this 24th day of April, 2017.

Signed: _/s/ Richard E. Marshall_

Richard E. Marshall

Transactions in Exar Corporation

| DATE | TRANSACTION | QUANTITY | PRICE PER SECURITY | COST |
|---|---|---|---|---|
| 3/28/2017 | Purchase | 25 | $10.47 | $261.75 |